Charles E. ABELS and Irene C. Abels, Appellants

v.

STATE FARM FIRE & CASUALTY COMPANY.

No. 84–3753.

United States Court of Appeals, Third Circuit.

Argued June 12, 1985.

Decided Aug. 8, 1985.

Before HIGGINBOTHAM and BECKER, Circuit Judges and LACEY, District Judge.*

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is an appeal from a final judgment of the United States District Court for the Western District of Pennsylvania ("the district court") 596 F.Supp. 1461, dismissing the claims of Charles and Irene Abels ("plaintiffs") against State Farm Fire & Casualty Company ("State Farm"). This lawsuit was originally filed in the Superior Court of the State of California, County of Los Angeles, was then removed to the United States District Court for the Central District of California, and finally was transferred to the district court. Because we find that federal subject matter jurisdiction was lacking at the time of removal, we will vacate the judgment of dismissal and remand to the district court with instructions that the case be further remanded to the Superior Court of California.

### I.

This case arises out of a fire that destroyed plaintiffs' home in Beaver Falls, Pennsylvania on October 19, 1981. According to plaintiffs, they had vacated the house, which was up for sale, on October 11, 1981, and they first learned of the fire on October 22 upon their arrival in California, where they had gone to "start a new life". At the time of the fire the house was insured by State Farm under a homeowner's policy purchased in 1979.

In November of 1981 plaintiffs filed a claim under the policy. On August 31, 1982 State Farm notified plaintiffs that it denied liability for various reasons, including its belief that the fire was incendiary in origin and that it was caused by the insureds. Plaintiffs filed suit in the Superior Court of California on December 2, 1982.

Bruce S. Gelman, (argued), Mark B. Aronson, Pittsburgh, Pa., for appellants.

Paul K. Geer, (argued), Jones, Gregg, Creehan & Gerace, Pittsburgh, Pa., Tod M. Castronovo, Hill, Gensen, Even, Crandall & Wade, Los Angeles, Cal., for appellee.

* Honorable Frederick B. Lacey, United States District Court for the District of New Jersey, sitting by designation.

The complaint stated three causes of action sounding in tort against State Farm: breach of duty of fair dealing and good faith; breach of fiduciary duties; and breach of statutory duties (unfair insurance practices) under Cal.Ins.Code § 790.03 (West Supp.1984). The statutory count also named as defendants "Does 1 through 10", and identified them as "employees and agents of [State Farm] who were responsible for processing plaintiffs' claim for benefits under the fire insurance policy which is the subject matter of this action." The Does were alleged to be citizens of California. On February 9, 1983, State Farm removed the case to federal district court in Los Angeles on a petition alleging diversity of citizenship. Plaintiffs' first motion to remand for lack of diversity was denied.

Once in federal court, State Farm promptly moved under 28 U.S.C. § 1404 (1982) for transfer to the Western District of Pennsylvania, contending that all relevant documents and all witnesses, except the plaintiffs, were there. The motion for transfer was initially denied. Plaintiffs then moved to amend their complaint to name as defendants a State Farm employee and an attorney who allegedly participated in the investigation and denial of their claim. Both were alleged to be California citizens, and plaintiffs accordingly moved to remand because the amendment would destroy diversity.

Without ruling on plaintiffs' motions to amend and to remand, the district court in Los Angeles, on its own motion, reconsidered its earlier ruling and transferred the case to the Western District of Pennsylvania. Plaintiffs petitioned the United States Court of Appeals for the Ninth Circuit for a writ of mandamus or prohibition to prevent the transfer. A two-judge panel denied relief, stating that they doubted that there was jurisdiction in the Ninth Circuit once the files had been physically transferred, and noting in the alternative that the transfer was not "clearly erroneous".[1] Plaintiffs then moved the district court for transfer back to the Central District of California, or, alternatively, remand to the California state court, again alleging lack of diversity. Because it felt that this would entail reviewing the decision of another district court, the court below denied the motion.

State Farm then filed a motion to dismiss, relying on the 12-month limitation of suit provision in the insurance policy. Plaintiffs contended that under California law this provision would not bar their suit. The district court, however, found that Pennsylvania law governed, and that plaintiffs' claims were time-barred. The district court also held that even if California law applied, the suit would be time-barred. In this appeal plaintiffs argue (1) that there is no federal subject matter jurisdiction over this case, (2) that the district court in Los Angeles abused its discretion in failing to rule on their motions to amend the complaint and to remand, and in transferring the case to Pennsylvania,[2] and (3) that the district court here erred in applying Pennsylvania law and in finding their claims time-barred.

1. The question of removal jurisdiction was not raised in the petition for mandamus or prohibition. Therefore, we do not believe that this alternative holding implies a finding by the Ninth Circuit that federal subject matter jurisdiction exists.

2. Plaintiffs do not offer any authority for the proposition that we may review a determination by a district court outside of our circuit that transfer to a district court within this circuit would be in the interests of justice. In view of our disposition of the subject matter jurisdiction issue, we find it unnecessary to address this problem of extraterritoriality. *Cf. Hoffman v. Blaski,* 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960) (transferee district court and appellate court may remand transferred case if it finds personal jurisdiction lacking or venue improper, and transferor court has not determined the issue); *Purex Corp. v. St. Louis National Stockyards Co.,* 374 F.2d 998 (7th Cir.) (transferee appellate court may not review transfer on ground that it was not in the interests of justice), *cert. denied,* 389 U.S. 824, 88 S.Ct. 59, 19 L.Ed.2d 77 (1967); *Nascone v. Spudnuts, Inc.,* 735 F.2d 763 (3d Cir.1984) (refusal of transferee court to *retransfer* may be reviewed by transferee appellate court on petition for mandamus or upon appeal from a final judgment).

## II.

The threshold question before us is whether there is federal subject matter jurisdiction over this case. State Farm contends that federal jurisdiction exists by virtue of the parties' complete diversity of citizenship, and that the case was properly removed to federal court pursuant to 28 U.S.C. § 1441. The plaintiffs are alleged to be citizens of California, and State Farm is alleged to be incorporated and have its principal place of business in Illinois. We must decide what effect, if any, is to be given the joinder of ten fictitiously named "Doe" defendants, all alleged to be citizens of California. This appears to be a question of first impression for this court.

We are mindful of a number of general principles that should guide the exercise of the federal courts' removal jurisdiction. Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand. 14 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3642, at 149 (2d ed. 1985) [hereinafter cited as *Federal Practice*]; *Wood v. Home Insurance Company*, 305 F.Supp. 937, 938 (C.D.Cal.1969). The defendant's right to remove is to be determined according to the plaintiffs' pleading at the time of the petition for removal, and it is the defendant's burden to show the existence of federal jurisdiction. *Pullman Company v. Jenkins*, 305 U.S. 534, 537, 540, 59 S.Ct. 347, 348, 350, 83 L.Ed. 334 (1939). In determining whether diversity jurisdiction exists, the citizenship of purely "nominal" parties may be disregarded.

13B *Federal Practice* § 3606, at 409 (2d ed. 1984).

*Pullman Company v. Jenkins*, *supra*, establishes that the presence of fictitiously named defendants in a state court complaint may, in certain circumstances, defeat diversity jurisdiction upon a petition for removal.[3] In that case the Pullman Company and a Pullman porter designated "John Doe One" were charged with negligence in permitting a disorderly passenger to board a train. As here, the plaintiffs were citizens of California and the defendant company a citizen and resident of Illinois. The complaint contained no allegation as to the unnamed porter's citizenship. Nonetheless, the Supreme Court held that diversity of citizenship was not present, and that remand to state court was required. The Court stressed that the Doe defendant's "relation to the Pullman Company and his negligence as its servant were fully alleged" and that therefore the "Company was bound to show that he was a non-resident in order to justify removal." 305 U.S. at 540, 59 S.Ct. at 350. The Court further noted that "[i]n the instant case there was no charge that the joinder was fraudulent. On the motion to remand it appeared that the Pullman porter, identified as Meyers, was a resident of California and had then been served with process." 305 U.S. at 541, 59 S.Ct. at 351. *Pullman* suggests to us a two-step analysis for determining whether the Doe defendants destroy diversity in this case. First we must ask whether, on the face of the complaint, there are sufficient allegations concerning their identity and conduct to justify consideration of their citizenship. Second, we must look beyond the face of the complaint for indicia of fraudulent joinder. In carrying out this analysis, we are greatly aided by the scholarly commentary,[4] and volumi-

---

3. Thus, fictitiously named defendants are not necessarily "nominal" parties. *See Grosso v. Butte Electric Railway Co.*, 217 Fed. 422, 423 (D.Mont.1914) ("The status of parties, whether formal or otherwise, does not depend upon the names by which they are designated, but upon their relation to the controversy involved, its effect upon their interests, and whether judgment is sought against them.").

4. *See, e.g.,* 14 *Federal Practice* § 3642 (2d ed. 1985); Comment, *John Doe, Where Are You? The Effects of Fictitious Defendants on Removal Jurisdiction in Diversity Cases*, 34 Ala.L.Rev. 99 (1983); Annot., 8 A.L.R.Fed. 675, § 6 (1971).

nous case law[5] that the practice of pleading Doe defendants has generated.

### A. *Sufficiency of the Allegations*

In determining whether allegations against a Doe defendant are sufficient on their face to destroy diversity, courts have looked for "some clue who the Doe might be, how the Doe might fit into the charging allegations, or how the Doe might relate to other parties." *Hartwell Corporation v. Boeing Company*, 678 F.2d 842, 843 (9th Cir.1982). The purpose of this inquiry is to determine whether the Does, though unnamed, are "real", or whether they are "shams" that have been inserted into the complaint out of "superstition" rather than any actual hope of obtaining a judgment. *See Grigg v. Southern Pacific Company*, 246 F.2d 613, 620 (9th Cir.1957) ("Certainly their phantoms, when Does live not and are accused of nothing, should not divert the course of justice."). Under this approach, "[a] plaintiff who wishes to sue unnamed defendants must articulate with greater particularity than notice pleading might otherwise demand the claimed involvement, capacity, and perhaps physical characteristics of the Doe defendants, or risk removal to federal court." *Herrera v. Exxon Corporation*, 430 F.Supp. 1215, 1220 (N.D.Cal. 1977). A brief description of some recent illustrative cases will be helpful.

The clearest cases for disregarding Doe defendants are those in which the complaint merely includes Does in the caption, without any charging allegations. Thus, in *Chism v. National Heritage Life Insurance Company*, 637 F.2d 1328 (9th Cir. 1981), the court wrote:

> The complaint, in a single opening paragraph, merely refers to "DOES I–X" without any charging allegations against them. Nowhere does it show their relationship to any claim of plaintiff. The complaint does not allege that Chism was injured by any act of any Doe. It fails even to suggest any relationship between the Does and plaintiff or any between the Does and defendant National. All charging allegations refer only to defendant National in the singular. There is not a single charging allegation against any Doe defendant.
>
> The Doe defendants cannot destroy diversity in this case because the complaint asserts no claim of any kind against them or any of them.

637 F.2d at 1330. *See also Thiel v. Southern Pacific Company*, 126 F.2d 710 (9th Cir.), *cert. denied*, 316 U.S. 698, 62 S.Ct. 1295, 86 L.Ed. 1767 (1942). Complaints containing only very general, catch-all allegations against the Does have fared no better. In *Lopez v. General Motors Corporation*, 697 F.2d 1328 (9th Cir.1983) the court disregarded the presence of Doe defendants where it was alleged only that they were "somehow negligent and liable for the injury and losses to Plaintiff herein alleged." 697 F.2d at 1331. In *Hartwell Corporation v. Boeing Company*, 678 F.2d 842 (9th Cir.1982), Hartwell filed a complaint for misappropriation of trade secrets against Boeing and twenty Doe defendants. The complaint specifically stated that Hartwell was uncertain of the Does' relationships with Boeing. 678 F.2d at 843 n. 2. The only allegation against the Does was that they "participated in the acts hereinafter complained of, either by ratifying them, or cooperating in them, or otherwise...." 678 F.2d at 843. The court found that the complaint gave no basis "for

---

**5.** The courts of the Ninth Circuit have been especially prolific, the pleading of fictitiously named defendants having taken on an almost ritualistic aspect in California. *See, e.g., Lopez v. General Motors Corp.*, 697 F.2d 1328 (9th Cir.1983); *Hartwell Corp. v. Boeing Co.*, 678 F.2d 842 (9th Cir.1982); *Chism v. National Heritage Life Insurance Co.*, 637 F.2d 1328 (9th Cir.1981); *Preaseau v. Prudential Insurance Co.*, 591 F.2d 74 (9th Cir.1979); *Reasoner v. Aetna Life Insurance Co.*, 600 F.Supp. 278 (S.D.Cal.1984); *Good-man v. Travelers Insurance Co.*, 561 F.Supp. 1111 (N.D.Cal.1983); *Green v. Mutual of Omaha*, 550 F.Supp. 815 (N.D.Cal.1982); *Goldberg v. CPC International*, 495 F.Supp. 233 (N.D.Cal. 1980); *Littlefield v. Continental Casualty Co.*, 475 F.Supp. 887 (C.D.Cal.1979); *Herrera v. Exxon Corp.*, 430 F.Supp. 1215 (N.D.Cal.1977). *See also Holloway v. Pacific Indemnity Co.*, 422 F.Supp. 1036 (E.D.Mich.1976) (reviewing earlier Ninth Circuit cases).

believing the Doe pleading is not a mere sham," though it suggested that the result might have been different had it been alleged that the Does were persons to whom Boeing had given the trade secrets. *Id. See also Hughes Construction Company v. Rheem Manufacturing Company,* 487 F.Supp. 345 (N.D.Miss.1980).[6]

These cases may be compared with the many others where Doe defendants have been held to destroy diversity. For example, *Pecherski v. General Motors Corporation,* 636 F.2d 1156 (8th Cir.1981), involved a claim by a GM employee that he received negligent medical treatment in a company dispensary. The complaint named GM and "Jane Doe" as defendants, alleging that Jane Doe, a nurse, "acting as an agent and servant of General Motors," negligently administered a whirlpool treatment. 636 F.2d at 1158. As Jane Doe's relation to GM and her negligence were fully alleged, the court found that her citizenship could not be disregarded. 636 F.2d at 1161. In *Green v. Mutual of Omaha,* 550 F.Supp. 815 (N.D. Cal.1982), a suit for wrongful refusal to pay insurance benefits, Doe allegations were deemed sufficient to defeat diversity where

> [t]he complaint identified several Does as "residents and citizens of the State of California [who] made representations

and promises to plaintiff during the sale of the contract of insurance." The complaint also included charges identifying the Does as participants "in processing plaintiff's claim for benefits."

550 F.Supp. at 817. The court concluded that it could not state that "plaintiff included Does in her complaint without reason or superstitiously.... On the contrary, the allegations against the fictitious defendants not only state a potential cause of action against the Does, but they specifically identify the relationship between plaintiff, Mutual and the particular unnamed parties." 550 F.Supp. at 818. *See also Preseau v. Prudential Insurance Company,* 591 F.2d 74 (9th Cir.1979); *Reasoner v. Aetna Life Insurance Company,* 600 F.Supp. 278 (S.D.Cal.1984); *Littlefield v. Continental Casualty Company,* 475 F.Supp. 887 (C.D.Cal.1979).

■ In light of these precedents, we have no trouble in concluding that the Doe allegations here are sufficient on their face to defeat diversity jurisdiction. The complaint specifically identifies the "Does 1 through 10" as "employees and agents of [State Farm] who were responsible for processing plaintiffs' claim for benefits under the fire insurance policy which is the subject of this action." It goes on to allege that the Does committed a variety of unfair

---

6. Saying too much can, however, be as fatal as saying too little. In *Hemmeter Center Co. v. Globe Illumination Co.,* 553 F.Supp. 381 (D.Hawaii 1982), the complaint recited:

> Defendants JOHN DOES 1–10, JANE DOES 1–10, DOE PARTNERSHIPS 1–10, DOE CORPORATIONS 1–10, ROE "NON–PROFIT" CORPORATIONS 1–10, A ROE GOVERNMENTAL ENTITIES 1–10 are sued herein under fictitious names for the reason that their true names and identities are presently unknown to plaintiffs except that they are connected in some manner with the named defendants and/or were the agents, servants, employees, employers, representatives, coventurers, associates, vendors, vendees, suppliers, manufacturers, subcontractors or contractors and/or owners, lessees, assignees, licensees, designers or engineers of the named defendants and/or were in some manner presently unknown to plaintiffs engaged in the activities alleged herein and/or were in some manner responsible for the losses or damages to plaintiffs; and/or manufactured and/or designed

and/or placed on the market a product which was defective, which defect was a proximate cause of losses or damages to plaintiffs; and/or installed and/or inspected and/or maintained and/or repaired and/or controlled some object or product in a negligent manner, which negligence was a proximate cause of losses or damages to plaintiffs; and/or conducted some activity in a negligent manner, which negligent conduct was a proximate cause of losses or damages to plaintiffs and/or was in some manner related to the named defendants; and plaintiffs pray leave to amend this complaint to insert therein their true names, identities, capacities, activities and/or responsibilities when the same are ascertained.

553 F.Supp. at 382. The court held that the "language in the complaint is designed to cover every possible entity who could in any way be liable for the damages alleged, and is not sufficiently specific to give a clue as to whom it pertains." *Id.*

insurance practices specifically enumerated in Cal.Ins.Code § 790.03.[7] With this degree of specificity in the complaint, we cannot say that the Doe defendants are mere "phantoms" who "live not and are accused of nothing."[8]

### B. *Fraudulent Joinder*

In this phase of our analysis we must look beyond the allegations of plaintiffs' complaint. "Courts have found joinder to be fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Goldberg v. CPC International,* 495 F.Supp. 233, 239 (N.D.Cal.1980). In determining that a plaintiff actually intends to proceed against Doe defendants, courts have relied on such indicia as an attempt, subsequent to filing the complaint, to identify the Does through discovery, *Pecherski v. General Motors Corporation, supra,* or to substitute named defendants, *Green v. Mutual of Omaha, supra.* Conversely, courts have found fraudulent joinder where plaintiffs failed to move to compel discovery that would permit identification of Doe defendants, *Jong v. General Motors Corporation,* 359 F.Supp. 223 (N.D.Cal.1973), or where plaintiffs failed—at the time of moving for remand to state court—to also move for joinder of newly identified Doe defendants, in the event the case was not remanded, *Asher v. Pacific Power and Light Company,* 249 F.Supp. 671, 675 (N.D.Cal.1965) ("Apparently the plaintiffs here are only concerned with recovering from these two defendants in a state action as they have made no motion to join them if the case remains in this Court...."). *See also Goodman v. Travelers Insurance Company,* 561 F.Supp. 1111 (N.D.Cal. 1983). The fact that the plaintiffs' motive for joining a Doe defendant is to defeat diversity is not considered indicative of fraudulent joinder. *Goldberg v. CPC International,* 495 F.Supp. at 239.

Plaintiffs' conduct in the instant case is consistent with an intention to actually proceed against at least some Doe defendants. Plaintiffs sought, through interrogatories, to identify those State Farm employees who were involved in the processing of their claim. Their motion to remand was accompanied by a motion to amend the complaint to substitute identified Doe defendants. To the extent that a subjective intent to proceed against Doe defendants is necessary to prevent a finding of fraudulent joinder, we find that plaintiffs pass this test.

We are somewhat more troubled when we turn to the objective criteria that there be some reasonable basis in fact and some colorable legal ground supporting a claim against the Doe defendants. There is substantial question whether California Insurance Code § 790.03 gives plaintiffs a cause of action against employees and agents of an insurance company. Nonetheless, enough recent authority supporting such a cause of action exists[9] to constrain us from holding that there is no "colorable" legal basis for the John Doe claims. To inquire any further into the

---

7. At oral argument, counsel for plaintiffs asserted that the gravamen of the unfair insurance practice count is that State Farm and the Does were dilatory in processing the claim.

8. We must also reject State Farm's contention that the Does should be disregarded because they are not "indispensable" parties. "Even though a party is merely proper, as, for example, a joint tortfeasor, if in fact he has been joined, that party's citizenship must be considered." 13B *Federal Practice* § 3606, at 413 (2d ed. 1984).

9. *See Reasoner v. Aetna Life Insurance Co.,* 600 F.Supp. 278 (S.D.Cal.1984); *Colonial Life & Accident Insurance Co. v. Superior Court,* 31 Cal.3d 785, 183 Cal.Rptr. 810, 647 P.2d 86 (1982); *Palmer v. R.L. Kautz & Co.,* 141 Cal.App.3d 155, 190 Cal.Rptr. 139 (1983); *Johnson v. Threats,* 140 Cal.App.3d 287, 189 Cal.Rptr. 447 (1983). We are advised that the *Palmer* decision has been ordered "de-published" by the California Supreme Court. We have been unable to find any published report of that action and, in any event, have not been apprised as to the jurisprudential significance of de-publication.

legal merits would be inappropriate in this preliminary jurisdictional determination.[10]

■ State Farm contends, with some force, that there is no reasonable basis in fact for the Doe allegations. Though the Does are alleged to be California citizens, State Farm asserts—and the sparse record before us so indicates—that plaintiffs' claim was processed[11] by State Farm's Pennsylvania office. Plaintiffs' motion to substitute California citizens Judy Johnson and Joanna McMahon as defendants does little to assuage our concerns. It appears that Johnson—an attorney for State Farm—merely took plaintiffs' depositions. The record does not indicate what, if any, role McMahon—a claims adjuster—might have played. However, we feel that the removal, transfer, and dismissal on the pleadings occurred in such rapid succession that plaintiffs have not, in all probability, had a reasonable opportunity to complete discovery and develop a record. It would be premature for a court, especially an appellate court, to declare at this stage that there is no basis in fact for the Doe allegations.[12]

We believe that the proper disposition of this case is for the district court to remand it to the Superior Court of Los Angeles County from which it originated.[13] This shall be done without prejudice to State Farm's right to remove to federal court at some later date should it become apparent that diversity jurisdiction exists, and all other requirements of 28 U.S.C. §§ 1441

and 1446 are met—including the requirement that the petition for removal be filed within 30 days "after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b). The 30-day period for filing a petition for removal has been held to commence when the Does are no longer part of the action and therefore can no longer destroy the required diversity. *See Preaseau v. Prudential Insurance Company*, 591 F.2d 74 (9th Cir.1979); *Gottlieb v. Firestone Steel Products Company*, 524 F.Supp. 1137 (E.D.Pa.1981); *Holloway v. Pacific Indemnity Company*, 422 F.Supp. 1036 (E.D.Mich.1976). Thus, if State Farm is correct that no cause of action lies against its individual agents and employees under the applicable law, or should plaintiffs go to trial without having joined and served any of the Does, State Farm should be able to secure a dismissal of the Doe defendants and then remove. Similarly, if State Farm petitions for removal after further development of the record, and is able to show the district court in Los Angeles that there is no reasonable basis in fact for the Doe allegations, then it should be able to survive a motion for remand.

■ We are cognizant of the fact that this disposition may well result in yet another removal, transfer to the Western Dis-

---

**10.** In a related vein, we must also reject State Farm's contention that because under Pennsylvania law—which they contend governs this controversy—no such cause of action is recognized (a fact plaintiffs concede), there is no colorable legal basis for the Doe claims. A federal court cannot engage in a choice of law analysis where diversity jurisdiction is not first established. Again, the result might be different were there no colorable basis for the plaintiffs' suggested choice of law, but such is not the case here.

**11.** At oral argument counsel for plaintiffs conceded that there was no basis in fact for the additional allegation, contained in the complaint's introductory paragraph, that some of the Does were involved in the *sale* of the policy.

**12.** The district court in Los Angeles did indicate that were it to have ruled on plaintiffs' motion to amend the complaint, it would have denied it. State Farm argues that this amounts to a determination that there was no factual basis for the claims against Johnson and McMahon. Unfortunately, the judge did not make any findings and did not give his reasoning.

**13.** We have considered the other theoretical options available in the unusual procedural posture in which we find this case, such as remanding directly to the California state court, or routing our mandate through the federal district court in Los Angeles. This disposition, however, will best facilitate the physical transfer of the record without opening up the Pandora's box of extraterritoriality.

trict of Pennsylvania, dismissal, and appeal to this court, thus only delaying—perhaps by years—our consideration of the merits. Nonetheless, a defect in subject matter jurisdiction can never be deemed harmless error, and perhaps time lost now will later spare the party that ultimately prevails the pain and annoyance of collateral attacks on the final judgment. Moreover, we believe that federal-state comity is well-served when federal courts can give deference to state rules of practice and pleading without unduly impinging on federally protected procedural rights. This, we believe, is just such a case.

### CONCLUSION

For the foregoing reasons, we will vacate the judgment of the district court and remand with instructions that this case be further remanded to the Superior Court of California, County of Los Angeles.