**MOORCO INTERNATIONAL, INC., Plaintiff,**

v.

**ELSAG BAILEY PROCESS AUTOMATION, N.V., and Elsag Bailey, Inc., Defendants.**

Civ. A. Nos. 95–092, 94–4432 and 94–7144.

United States District Court, E.D. Pennsylvania.

April 11, 1995.

Mark M. Wilcox, Drinker, Biddle & Reath, Philadelphia, PA, James Edward Maloney, Baker & Botts, L.L.P., Houston, for plaintiff.

Michael L. Kichline, Dechert, Price & Rhoads, Philadelphia, PA, John L. Hill, Jr., Liddell, Sapp, Zivley, Hill & Laboon, Houston, TX, for defendant.

### *MEMORANDUM*

ANITA B. BRODY, District Judge.

Plaintiff moves pursuant to 28 U.S.C. § 1447(c) to remand to the District Court of

Harris County, Texas, this action for breach of contract and for tortious interference with contract and prospective business relations. In support of this motion, plaintiff observes that the asserted basis for removal jurisdiction, diversity of citizenship, does not exist here because one of the defendants in this suit is a citizen of Delaware, as is plaintiff. Defendants respond that the nondiverse defendant has been has been "fraudulently joined" solely to defeat federal diversity jurisdiction and should therefore be disregarded. Adjudicating the fraudulent joinder question requires me to determine whether the tortious interference allegations asserted against the non-diverse defendant rise above the frivolous and wholly insubstantial. I conclude that these allegations satisfy this lenient jurisdictional standard and that the non-diverse defendant thus cannot be said to have been fraudulently joined. Accordingly, I will remand this action back to the state court in Texas.

Plaintiff has also requested that it be awarded costs on this motion. Because I conclude that defendants' removal of this action to federal court was not in bad faith or obviously without basis, I will deny plaintiff's request for costs.

## I. BACKGROUND

The following facts are presented as alleged in the complaint filed in Texas state court. Plaintiff, Moorco International, Inc. ("Moorco"), is a Delaware corporation with its principal place of business in Texas. It manufactures and services fluid measurement and pressure control instruments for use in the petroleum, industrial process, and electrical power industries. Between September 1993 and March 1994, Moorco took part in a bidding contest to acquire control of the Fischer & Porter Company ("Fischer & Porter), a Pennsylvania manufacturer and supplier of similar measurement and control products. In March 1994, Fischer & Porter entered into a merger agreement with Moorco, the prevailing bidder, and announced the agreement in a contemporaneous press release. Shortly after the Moorco–Fischer & Porter agreement was announced, Elsag Bailey Process Automation, N.V. ("Elsag Neth-

erlands"), a Netherlands holding company, and Elsag Netherlands' wholly owned operating subsidiary, Elsag Bailey, Inc. ("Elsag Delaware"), a Delaware corporation with its principal place of business in Ohio, initiated attempts to acquire Fischer & Porter. The efforts of Elsag Netherlands and Elsag Delaware (together, "Elsag defendants") culminated in Fischer & Porter's termination of the Moorco merger agreement and subsequent execution of a similar agreement with Elsag Netherlands. Thereafter, Moorco and Fischer & Porter were unable to agree on the proper calculation of the amount due Moorco under a "termination fee" provision of the canceled Moorco agreement.

A flurry of litigation followed upon the termination of the Moorco merger agreement. First, Fischer & Porter and Elsag Netherlands filed a declaratory and injunctive action against Moorco in Pennsylvania state court, seeking an adjudication that Fischer & Porter and Elsag Netherlands were not liable for breach of the Moorco merger agreement. That action was removed by Moorco to this Court and docketed under No. 94 Civ. 4432. Moorco then filed two separate actions in federal court in the Southern District of Texas, one against Fischer & Porter and the other against Elsag Netherlands. Moorco withdrew the Texas federal action against Elsag Netherlands, however, and commenced the instant action in Texas state court against both Elsag Netherlands and Elsag Delaware. The Texas state court action alleged Texas state law claims of breach of contract against Elsag Netherlands and of tortious interference with contract and prospective business relations against both Elsag Netherlands and Elsag Delaware. Subsequently, the Texas federal action against Fischer & Porter was transferred to this Court and docketed under No. 94 Civ. 7144.

Meanwhile, Elsag defendants had removed the instant Texas state court action to federal court in Texas and had filed a motion to transfer it to this Court. Moorco immediately moved the Texas federal court to remand the case back to the District Court of Harris County, Texas. The Texas federal court granted the transfer request without reach-

ing the remand issue. Thus, with the remand motion outstanding, this action was transferred here and docketed under No. 95 Civ. 092. By Order of January 25, 1995, I consolidated all three actions under No. 94 Civ. 4432. I now address the outstanding remand motion in the removed Texas state court action, No. 95 Civ. 092.

## II. DISCUSSION

### A. Fraudulent Joinder

Removal of this action is predicated upon diversity of citizenship. Elsag Delaware, however, is a fellow Delaware citizen of Moorco's. Recognizing this, Elsag defendants contend that Elsag Delaware has been fraudulently joined to this action and should be disregarded for purposes of establishing jurisdiction in federal court.

The law of fraudulent joinder has evolved into what are now "settled precepts." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir.1992). The removing party bears a "heavy burden of persuasion" in demonstrating that the resident defendant was fraudulently joined. *Id.* (citations omitted). Joinder is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined [non-diverse] defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment." *Id.* (internal quotations omitted). If there is "even a possibility" that the complaint states a cause of action against the non-diverse defendant, remand is required. *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991). Thus, remand can be staved off only if the claim asserted against the resident defendant is "wholly insubstantial and frivolous." *Batoff*, 977 F.2d at 852 (citing *Lunderstadt v. Colafella*, 885 F.2d 66, 70 (3d Cir.1989)).

This jurisdictional inquiry into a plaintiff's allegations is less searching than the analysis applied under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. *Id.* In undertaking it, a district court must assume as true all factual allegations in the complaint. *See Steel Valley Auth. v. Union*

*Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir.1987), *cert. dismissed*, 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988). A district court must also "resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Boyer*, 913 F.2d at 111. If there is doubt as to which jurisdiction's substantive law controls, the law of the plaintiff's asserted jurisdiction is applied if its suggestion has even a colorable basis, as "[a] federal court cannot engage in a choice of law analysis where diversity jurisdiction is not first established." *Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26, 33 n. 10 (3d Cir.1985).

Elsag defendants advance three main contentions in support of their position that Elsag Delaware has been fraudulently joined here. First, they argue that Moorco's complaint (called a "petition" in the parlance of Texas procedure and hereafter referred to as the "Texas Petition") omits entirely certain necessary elements of the tortious interference cause of action it attempts to allege against Elsag Delaware. Second, they assert that the elements of that cause of action that are pled in the Texas Petition are unsupported by the factual allegations levelled at Elsag Delaware, which do not implicate the latter in any tortious conduct. Third, they contend that a finding of fraudulent joinder is appropriate because Moorco, in pleading its allegations against Elsag Delaware, is motivated solely by a desire to engage in forum shopping, not by any legitimate claim. None of these arguments can salvage removal here.

### 1. "Omitted" Elements of the Tortious Interference Cause of Action

Citing Pennsylvania law on tortious interference, Elsag defendants observe that Moorco must demonstrate as part of its *prima facie* case that Elsag Delaware's alleged interference was both (a) unjustified as a means of protecting legitimate business interests and (b) "improper," a term of art limited to conduct that is illegal or independently tortious. *See Windsor Sec., Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 663–66 (3d Cir.1993) (requiring, under Pennsylvania law of tortious interference, showing that alleged conduct was both "improper" and unjustified as means of furthering legitimate

business interests). Because the Texas Petition fails even to plead these elements against Elsag Delaware, Elsag defendants contend, its tortious interference claims against Elsag Delaware are "wholly insubstantial and frivolous."

But I must assume on this motion to remand that Texas law, not Pennsylvania law, governs the tortious interference inquiry because Moorco suggests that it does. *See* Br. in Supp. of Moorco's Mot. to Remand at 12, 19 (citing Texas substantive law on tortious interference claims). That suggestion, moreover, has at least a colorable basis, as both Pennsylvania and Texas choice of law principles apply the law of the forum most concerned with the alleged tortious interference. *See Alvord–Polk, Inc. v. F. Schumacher & Co.*, No. 90 Civ. 3617, 1992 WL 59096, at *20 (E.D.Pa. Mar. 19, 1992) (discussing, in context of tortious interference claim, Pennsylvania's adoption of choice of law test based on which forum has greatest interest in problem), *rev'd in part on other grounds*, 37 F.3d 996 (3d Cir.1994); *Motorola, Inc. v. Hitachi, Ltd.*, 750 F.Supp. 1319, 1325–26 (W.D.Tex.) (applying Texas's "most significant relationship" test for determining which forum's law governs tort claims), *vacated per stipulation*, 923 F.2d 868 (Fed.Cir.1990) (table; text reprinted at 1990 WL 186838). The most concerned forum here is arguably Texas.

The Texas Petition alleges a number of facts that connect the tortious interference to Texas, including these: the Moorco merger agreement underlying the claim against Elsag Delaware was negotiated, executed, and performable in Texas, Tex.Pet. ¶ 33; the termination fee provision that Elsag Delaware induced Fischer & Porter to breach called for payment in Texas, *id.* ¶ 37; the Moorco merger agreement contained an additional provision whose breach was induced by Elsag Delaware requiring that Moorco be given, in Texas, certain information about any post-execution attempts to acquire Fischer & Porter, *id.* ¶ 35; Elsag Delaware conducted its process automation activities in Texas, among other places, *id.* ¶ 38; the Moorco merger funding was arranged by a Texas lender and was to be dispersed through a Texas paying agent, *id.* ¶ 33; and Elsag De-

laware's tortious acts caused substantial harm to Moorco in Texas, *id.* ¶ 34.

These allegations are sufficient to constitute a colorable basis for applying Texas law to Moorco's tortious interference claim, notwithstanding that the agreement whose breach is alleged to have been tortiously induced is itself governed by Pennsylvania law. *Cf. Motorola, Inc.*, 750 F.Supp. at 1325–26 (applying Texas law to tort claims based on infringement of licensing agreement governed by Illinois law where economic losses resulting from alleged license infringement would be felt most strongly by plaintiff's Texas-based division and where technology covered by license was transferred in Texas). Thus, while I do not rule that a Texas court must apply Texas law to Moorco's tortious interference claims, I assume that Texas law governs for purposes of this remand motion. *See Abels*, 770 F.2d at 33 n. 10 (district court on motion to remand must apply law of forum suggested by plaintiff if there is a colorable basis for such law's application).

■ Turning to the substance of Texas law on tortious interference, the cause of action asserted against Elsag Delaware requires only that Moorco demonstrate (i) the existence or prospect of a contract, (ii) an intentional and willful act interfering with the contract that was calculated to cause damage to the plaintiff, and (iii) damages. *Kiepfer v. Beller*, 944 F.2d 1213, 1220 (5th Cir.1991) (applying Texas law) (citations omitted). The Pennsylvania requirement that the interfering act be "improper" is not among these elements. Moreover, lack of justification is not a requirement of the *prima facie* case under Texas law; rather, justification is an affirmative defense to be pleaded and proved by the defendant. *See Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 939 (Tex.1991). Thus, the elements Elsag defendants identify as "omitted" are unnecessary under Texas law.

2. *Sufficiency of the Tortious Interference Allegations Against Elsag Delaware*

■ I further conclude that the elements of the tortious interference claim that are required under Texas law have been sufficiently alleged against Elsag Delaware to

defeat the assertion that Elsag Delaware has been fraudulently joined here. Elsag defendants take primary aim at the sufficiency of the allegations describing Elsag Delaware's direct acts of interference with the Moorco merger agreement and with Moorco's prospective business relations arising out of that agreement. In this regard, the Texas Petition recites the following:

21. [Elsag Delaware] tortiously interfered with the [Moorco merger agreement] and with Moorco's business relationships with Fischer & Porter. Six officers and directors of [Elsag Delaware]—Massimo Brunelli, Gene Yon, Mike Zaharna, David Norgard, Mark Santo, and Vicenzo Cannatelli—actively participated in the negotiation for and merger with Fischer & Porter. On information and belief, other employees of [Elsag Delaware] were actively involved in the due diligence, evaluation and eventual acquisition of Fischer & Porter....

....

23. Once Moorco learned of [Elsag Netherlands'] post-auction proposal, it immediately and repeatedly thereafter made requests for information concerning the proposal. At the insistence of [Elsag Netherlands] and [Elsag Delaware], Fischer & Porter refused to provide any of this information to Moorco, even though section 3.04 of the [Moorco merger agreement required Fischer & Porter to do so].

24. [Elsag Delaware] and [Elsag Netherlands] also wrongfully and intentionally induced Fischer & Porter to fail to perform its obligations under section 5.05 of the [Moorco merger agreement], which required Fischer & Porter to pay to Moorco [a termination fee determined by reference to a contractually agreed formula].

....

28. Fischer & Porter ... was induced to join [Elsag Netherlands in the declaratory judgement action filed in Pennsylvania state court] and to take [an] inconsistent position with respect to the amount of the [termination fee due Moorco] by its new merger partner, [Elsag Netherlands], and its subsidiary, [Elsag Delaware].

Tex.Pet. ¶¶ 21, 23–24, 28.

These allegations, judged by the deferential standard I apply on a motion to remand, state with adequate specificity willful and deliberate acts of interference calculated to injure Moorco. They aver that Elsag Delaware employees actively undertook to negotiate, investigate and bring to fruition a merger agreement supplanting Moorco's. They further allege that Elsag Delaware contrived to secure or at least actively assisted Fischer & Porter's noncompliance with the latter's termination fee and information reporting obligations to Moorco. Thus, I find that the foregoing allegations constitute more than a "wholly insubstantial and frivolous" claim for tortious interference under Texas law.[1]

Elsag defendants attempt to defeat this reading of the Texas Petition by isolating as the sole tortious act alleged the conveyance of Elsag Netherlands' formal merger proposal dated April 8, 1994, to the exclusion of all conduct subsequent to that date. Because the foregoing allegations against Elsag Delaware place it on the scene after April 8, 1994, Elsag defendants argue, Elsag Delaware

---

1. The decisions cited by Elsag defendants' do not dictate a different result here. In those cases, allegations were found insufficient to withstand fraudulent joinder scrutiny either because the cause of action pleaded did not exist at all or existed only under exceptions not applicable there, or because the allegations pleaded were nothing more than a verbatim rendition of the statutory provision at issue. See Cook v. Pep Boys–Mannie, Moe & Jack, Inc., 641 F.Supp. 43, 47 (E.D.Pa.1985) (allegations discussing only conduct that fell outside narrow exception to statutory bar to cause of action); Peer v. Minnesota Mut. Fire & Casualty Co., No. 93 Civ. 2338, 1993 WL 533283, at *6 & n. 7 (E.D.Pa. Dec. 23, 1993) (allegations tracking, nearly verbatim, language of statute giving rise to cause of action). In one case, there were no allegations at all against the resident defendant; there was simply a caption joining him to the suit. See Castner v. Exxon Co., U.S.A., 563 F.Supp. 684, 687–88 (E.D.Pa.1983). Here, by contrast, the tort of interference with contract and prospective business relations is alive and well under Texas law, and I cannot say with certainty that the specific conduct alleged against Elsag Delaware would fail to satisfy the requisites of that cause of action.

cannot be implicated in any tortious conduct. But the Texas Petition charges that Elsag defendants' "post-auction proposal of April 8, 1994, and subsequent conduct constituted a knowing and wrongful inducement" for Fischer & Porter to breach its contractual obligations with Moorco. Tex.Pet. ¶ 53. Moreover, each of the tortious interference counts repeats and realleges all prior paragraphs of the Texas Petition as bases for the asserted violation. *Id.* ¶¶ 51, 55. Thus, a fair reading of the Texas Petition requires me to conclude that the alleged acts of Elsag Delaware quoted above are embraced by Moorco's tortious interference claims.

### 3. Moorco's Alleged "Forum Shopping" Motive

■■■ Finally, Elsag defendants argue that fraudulent joinder is established here by Moorco's litigation tactics, which smack of impermissible forum shopping. They characterize Moorco's commencement of this suit in Texas state court and its current attempt at remand as the latest move in a transparent "Texas or bust" campaign. But Moorco's intent in suing originally in Texas state court or in seeking remand there is irrelevant to the present fraudulent joinder analysis. *See Abels,* 770 F.2d at 32 ("The fact that the plaintiffs' motive for joining a Doe defendant is to defeat diversity is not considered indicative of fraudulent joinder.") (citing *Goldberg v. CPC Int'l,* 495 F.Supp. 233, 239 (N.D.Cal. 1980)). Moreover, there is nothing improper about formulating and executing an effective litigation strategy, including selecting the most favorable forum for the client's case. Thus, Elsag Delaware's joinder cannot be deemed fraudulent because Moorco finds it advantageous to pursue these tort and contract claims in Texas state court.

\* \* \* \* \* \*

In sum, Moorco's tortious interference claims against Elsag Delaware are not "wholly insubstantial and frivolous" under Texas law. Accordingly, Elsag Delaware cannot be disregarded as a fraudulently joined party. Because diversity of citizenship is thus absent as a basis for removal jurisdiction, I will remand this case back to the District Court of Harris County, Texas, pursuant to 28 U.S.C. § 1447(c).[2]

I emphasize the limited nature of my holding. I do not rule that the Texas state court must find that Moorco's allegations are sufficient to state a claim against Elsag Delaware for tortious interference, or that the Texas state court must apply the substantive law of Texas to these claims. Rather, I rule only that the Texas state court must be the tribunal to undertake both the choice of law and the underlying merits determinations.

### B. Request for Costs

■■■ Moorco also requests that its costs and attorney's fees incurred on this motion be imposed on Elsag defendants under § 1447(c), which states simply, "An order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Imposition of costs pursuant to this provision is within the sound discretion of the court. *See Scheidell v. State Farm Fire & Casualty Co.,* No. 91 Civ. 2695, 1991 WL 87042, at *1 (E.D.Pa. May 21, 1991). Courts generally award costs under § 1447(c) where the lack of removal jurisdiction is obvious or where a defendant has not acted in good faith in removing the case. *Id.* (citations omitted). For example, if "minimal research" into a fundamental question would have revealed that removal was improper, costs may be awarded. *Little League Baseball, Inc. v. Welsh Publishing Group, Inc.,* 874 F.Supp. 648, 655–56 (M.D.Pa. Feb. 1, 1995) (observing that "minimal research" would have revealed that plaintiff was a federally chartered corporation with nationwide activities and thus not subject to diversity jurisdiction). By contrast, if there is no clear precedent on the dispositive issue, a good faith attempt to remove does not warrant the sanction of costs. *See Foster v. Chesapeake Ins. Co.,* No. 89 Civ. 7468, 1991 WL 224568, at *1 (E.D.Pa. Oct. 24, 1991).

---

**2.** Where, as here, remand is expressly founded on 28 U.S.C. § 1447(c), the Third Circuit has interpreted 28 U.S.C. § 1447(d) to prohibit review of the district court's decision, by appeal, mandamus, or otherwise. *See Balazik v. County of Dauphin,* 44 F.3d 209, 212–14 (3d Cir.1995).

Here, Elsag defendants have briefed the fraudulent joinder issue extensively and with commendable professionalism. While ultimately unavailing, their argument as to the insufficiency of Moorco's tortious interference allegations against Elsag Delaware was spirited, well-researched, and effectively presented. Moreover, their fundamental premise that Pennsylvania law controlled the jurisdictional inquiry, though erroneous, cannot be characterized as frivolous given that the underlying merger agreement is governed by Pennsylvania law. *Cf. Miyano Mach. USA, Inc. v. Zonar*, No. 92 Civ. 2385, 1994 WL 233649, at *2 (N.D.Ill. May 23, 1994) (observing that some courts apply contractual choice of law provision to tort claims "closely related to the parties' contractual relationship") (internal quotations and citations omitted). On the whole, I cannot say that the case for remand here is so compelling that the mere attempt to argue · the contrary rises to the level of bad faith. Given the high quality of advocacy that has marked this motion and indeed this entire litigation, I find that imposition of costs against Elsag defendants is not appropriate under 28 U.S.C. § 1447(c).[3]

## III. CONCLUSION

Moorco's tortious interference allegations against Elsag Delaware are not so "wholly insubstantial and frivolous" as to permit me to disregard the latter as fraudulently joined to this action. The substantive law of Texas governs the jurisdictional inquiry into the merits of these allegations, and, under that state's law, Moorco's claims survive the deferential examination applied on a motion to remand. Because Elsag Delaware must remain a party to this action, diversity jurisdiction is lacking as a basis for removal. Accordingly, I will remand Civil Action No. 95–092 to the District Court of Harris County, Texas, pursuant to 28 U.S.C. § 1447(c). Furthermore, because Elsag defendants' attempt to remove this case was not in bad faith or obviously without basis, I will deny Moorco's request for costs under that statutory provision. An appropriate order follows.

---

3. Moorco contends that counsel for Elsag defendants was aware of financing documents in Elsag defendants' files reflecting·Elsag Delaware's substantial involvement in the allegedly tortious conduct, and nonetheless attempted to remove this case on the grounds of fraudulent joinder. This, Moorco claims, amounts to bad faith. Elsag defendants, however, vigorously dispute Moorco's reading of these documents. In any event, at least one court has held that the determination of fraudulent joinder turns exclusively on the strength of the complaint and that matters outside that pleading cannot be considered. *See Peer*, 1993 WL 533283, at *6 n. 8. Thus, as it is Moorco's burden to plead viable allegations against Elsag Delaware, Elsag defendants could have legitimately decided to subject Moorco's complaint to fraudulent joinder scrutiny notwithstanding the implications of the financing documents in their possession.